UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JACOB B.,                                          *

    Plaintiff,                                   *

v.                                                 *          Civil Action No. EA-25-1214

FRANK J. BISIGNANO,                               *
  Commissioner of Social Security,[1]
    Defendant.                                *

**MEMORANDUM OPINION**

On April 11, 2025, Plaintiff Jacob B. petitioned this Court to review the final decision of

the Social Security Administration (SSA or Commissioner) denying his claim for benefits.  ECF

No. 1.  This case was referred to a United States Magistrate Judge with the parties' consent.[2]

ECF Nos. 3–5; 28 U.S.C. § 636; Local Rule 301.4 (D. Md. Dec. 1, 2025).  Pending before the

Court is Plaintiff's appeal, which is fully briefed.  ECF Nos. 12, 16–17.  No hearing is necessary.

Local Rule 105.6.  This Court must uphold the decision of the SSA if it is supported by

substantial evidence and if the SSA employed proper legal standards.  42 U.S.C. §§ 405(g),

1383(c)(3); *Craig* v. *Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Under that standard, and for the

reasons set forth below, the Commissioner's decision is reversed, and the case is remanded for

further proceedings consistent with this Memorandum Opinion.

I.       **BACKGROUND**

    A.       **Procedural History**

In 2021, Plaintiff applied for Disability Insurance Benefits under Title II of the Social

---

[1]  Plaintiff filed suit against Acting Commissioner of Social Security Leland Dudek.  ECF No. 1.  Pursuant to Federal Rule of Civil Procedure 25(d), Frank J. Bisignano was substituted as Defendant in this case when he became the Commissioner on May 7, 2025.  *See* https://perma.cc/6HGN-DL7G (last visited April 10, 2026).

[2]  This case was reassigned to the undersigned on February 6, 2026.

Security Act (the Act), 42 U.S.C. § 401 *et seq.*  ECF No. 8-6 at 9, 21.[3, 4]  Plaintiff alleged a disability onset date of January 30, 2016.  *Id.* at 10, 28.  Plaintiff claimed that he was disabled within the meaning of the Act due to a "work injury" in which he slipped and fell in the snow in 2016 and "[s]prained his left ankle," as well as swelling and numbness in his ankle, hyperthyroidism, three hernias in his stomach, headaches, "[Reflex Sympathetic Dystrophy Syndrome][5] in [his] ankle," depression, and anxiety.  ECF No. 8-6 at 16.  The SSA initially denied Plaintiff's application for benefits on December 7, 2021.  ECF Nos. 8-4 at 22–23; 8-5 at 8–11.  Plaintiff sought reconsideration, and the SSA affirmed its initial determination that Plaintiff was not entitled to Disability Insurance Benefits on February 17, 2023.  ECF Nos. 8-4 at 42; 8-5 at 17, 25–27.  Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on February 7, 2024.  ECF Nos. 8-3 at 18, 37; 8-5 at 45.  On March 3, 2024, the ALJ rendered a decision in which she found that Plaintiff was not disabled within the meaning of the Act.  ECF No. 8-3 at 15–30.  Plaintiff requested further review, which the Appeals Council denied on February 18, 2025.  ECF Nos. 8-3 at 2–5; 8-5 at 122–123.  The ALJ's decision therefore constitutes the final, reviewable decision of the SSA.  *Sims* v. *Apfel*, 530 U.S. 103, 106-107 (2000); 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(a).

---

[3]  Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files (CM/ECF) system printed at the top of the cited document.

[4]  Plaintiff also applied for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*  ECF No. 8-6 at 9.  The undersigned discusses only Plaintiff's Disability Insurance Benefits application in this opinion, as this is the only application Plaintiff identifies in his memoranda of law.  ECF Nos. 8-3 at 18; 12 at 1–2.

[5]  Reflex Sympathetic Dystrophy Syndrome is also frequently known as Complex Regional Pain Syndrome, Type I.  Social Security Ruling 03-2p, Titles II and XVI: Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome (SSR 03-2p), 68 Fed. Reg. 59,971-01, 59,971 (Oct. 20, 2003).  These terms are "synonymous" and "describe a unique clinical syndrome" that "is characterized by complaints of intense pain and typically includes signs of autonomic dysfunction."  *Id.*  For consistency with the ALJ's decision, the undersigned will refer to this syndrome as "Complex Regional Pain Syndrome."

**B.**     **Statutory Framework**

The Act authorizes disability insurance benefit payments to every insured individual who "is under a disability."  *Cleveland* v. *Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 801 (1999) (quoting 42 U.S.C. § 423(a)(1)); *see also Shue* v. *O'Malley*, No. 23-1795, 2024 WL 2827936, at *3 (4th Cir. June 4, 2024).  The Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).

Federal regulations require an ALJ to evaluate a claimant's disability claim using a five-step sequential evaluation process.  20 C.F.R. § 404.1520.  Through this process, an ALJ evaluates, in order, "whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy."  *Hancock* v. *Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "The applicant bears the burden of production and proof during the first four steps."  *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).  At the fifth step, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience."  *Mascio* v. *Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (internal quotation marks and citation omitted).

If the claimant satisfies step three, there is "an automatic finding of disability," which "relieves the decision maker from proceeding to steps 4 and 5."  *Patterson* v. *Commissioner of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017).  If the claimant does not carry their burden at the third step of the sequential evaluation, then the ALJ must assess relevant evidence and

make a finding regarding the claimant's residual functional capacity.  20 C.F.R. § 404.1520(e); *Monroe* v. *Colvin*, 826 F.3d 176, 179 (4th Cir. 2016).  Residual functional capacity is defined as "the most [the claimant] can still do despite [the claimant's physical and mental] limitations." 20 C.F.R. § 404.1545.  The residual functional capacity assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis."  *Mascio*, 780 F.3d at 636 (quoting Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims (SSR 96-8p), 61 Fed. Reg. 34,474-01, 34,475 (July 2, 1996)).  "Only after such a function-by-function analysis may an ALJ express [residual functional capacity] 'in terms of the exertional levels of work.'" *Monroe*, 826 F.3d at 187 (quoting *Mascio*, 780 F.3d at 636).  The ALJ then uses its residual functional capacity determination at the fourth and fifth steps of the disability assessment. 20 C.F.R. § 404.1520(e); *Monroe*, 826 F.3d at 179.

C.      The ALJ's Decision

The ALJ initially determined that Plaintiff last met the Act's "insured status requirements . . . on September 30, 2021."  ECF No. 8-3 at 20 (bold removed).  At step one of the five-step sequential disability evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date.  *Id*.  At step two, the ALJ found that Plaintiff suffered from the severe impairments of "complex regional pain syndrome . . . of [the] left lower extremity, Hashimoto's thyroiditis/hypothyroidism, depressive disorder, and anxiety disorder" (*id*. (bold removed)), and the non-severe impairments of low back pain, left hip pain, and left shoulder pain (*id*. at 20–21).  At step three, the ALJ determined that Plaintiff "[does] not have an impairment or combination of impairments that [meets] or medically equal[s] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."[6]  *Id*. at 21

---

[6]  Appendix 1 to 20 C.F.R. Part 404, Subpart P provides a listing of impairments.  Within

(bold removed). In reaching this conclusion, the ALJ evaluated Plaintiff's obesity under Social Security Ruling 19-2p, Titles II and XVI: Evaluating Cases Involving Obesity, 84 Fed. Reg. 22,924 (May 20, 2019), and his other disorders under 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 21–23. The ALJ also evaluated the "paragraph B" criteria and whether Plaintiff's mental impairments resulted in "one extreme limitation or two marked limitations in a broad area of functioning." *Id.* at 22. The ALJ found that Plaintiff has a mild limitation in the area of "adapting or managing oneself," moderate limitations in the three other functional areas, outlined the evidence that supported her findings, and concluded that the "paragraph B" criteria were not satisfied. *Id.* at 22–23.

Before continuing to the fourth step of the sequential evaluation, the ALJ determined that Plaintiff retained the residual functional capacity to:

> perform light work . . . except he can never climb ladders, ropes, or scaffolds; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. He can never be exposed to extreme cold, heat, or hazards such as dangerous moving machinery and unprotected heights. He can occasionally operate foot controls with the left lower extremity. He can frequently reach overhead with the left upper extremity.
>
> He can understand, remember, and carry out simple instructions and make simple work[-]related decisions. He can work at a consistent pace throughout the workday but not at a production rate pace such as on an assembly line or work involving monthly or hourly quotas. He can tolerate occasional interaction with coworkers, supervisors, and the public. He can tolerate occasional changes in work setting.

*Id*. at 23–24 (bold removed, line break added). At the fourth step, the ALJ determined that Plaintiff is unable to perform past relevant work as a maintenance technician or stage technician.

---

Appendix 1, "Adult Listings 12.00 *et seq*. . . . pertain to mental impairments, and consist of (1) 'paragraph A criteria,' which consist of a set of medical findings; (2) 'paragraph B criteria,' which consist of a set of impairment-related functional limitations; and (3) 'paragraph C criteria,' which relate to 'serious and persistent' disorders lasting at least two years with a history of ongoing medical treatment and marginal adjustment." *Autumn T.* v. *Saul*, Civil Action No. DLB-19-1572, 2020 WL 4194145, at *3 (D. Md. July 21, 2020).

*Id*. at 28.  Lastly, at the fifth step, the ALJ determined that considering Plaintiff's "age,

education, work experience, and residual functional capacity, there [are] jobs that exist in

significant numbers in the national economy that [he can] perform[ ]."  *Id*. at 29 (bold removed).

Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the

Act, and that the SSA properly denied his applications for benefits.  *Id*. at 30.

## II.    DISCUSSION

On appeal, Plaintiff argues that the ALJ's residual functional capacity determination is

not supported by substantial evidence because the ALJ did not apply the correct legal framework

in his assessment of Plaintiff's Complex Regional Pain Syndrome diagnosis.[7]  ECF No. 12 at 7–

18.

### A.    Standard of Review

The scope of judicial review of the SSA's disability determination is "circumscribed."

*Britt* v. *Saul*, 860 Fed. Appx. 256, 259 (4th Cir. 2021) (citing 42 U.S.C. § 405(g)).  The Court

must affirm the decision "so long as the agency applied correct legal standards and the factual

findings are supported by substantial evidence."  *Id.*; *accord Mascio*, 780 F.3d at 634; *Coffman*

v. *Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  Factual findings supported by substantial evidence

"shall be conclusive."  42 U.S.C. § 405(g); *see also Hays* v. *Sullivan*, 907 F.2d 1453, 1456 (4th

Cir. 1990) ("[I]t is not within the province of a reviewing court to determine the weight of the

evidence, nor is it the court's function to substitute its judgment for that of the Secretary if [the]

decision is supported by substantial evidence.").

---

[7]  Plaintiff also argues that the ALJ failed to define "production pace rate" in her hypothetical question to the vocational expert.  ECF No. 12 at 18–22.  Because the ALJ's assessment of Plaintiff's Complex Regional Pain Syndrome is dispositive, it is unnecessary to address Plaintiff's second argument.

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek* v. *Berryhill*, 587 U.S. 97, 102 (2019). Under this standard of review, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 103 (quoting *Consolidated Edison Co.* v. *NLRB*, 305 U.S. 197, 229 (1938)); *see also Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) ("Substantial evidence . . . is evidence which a reasoning mind would accept as sufficient to support a particular conclusion."). It is "more than a mere scintilla . . . [and] somewhat less than a preponderance." *Laws*, 368 F.2d at 642. The "threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103.

In conducting the substantial evidence inquiry, this Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co.* v. *Akers*, 131 F.3d 438, 439-440 (4th Cir. 1997). Although an ALJ's decision must be sufficiently detailed to allow for meaningful judicial review, an "elaborate or even sophisticated" explanation is not required. *Mascio*, 780 F.3d at 636-637; *T-Mobile S., LLC* v. *City of Roswell*, 574 U.S. 293, 302 (2015). Rather, an administrative decision's reasoning need only be "reasonably discernible." *Garland* v. *Ming Dai*, 593 U.S. 357, 369 (2021). "Meaningful review is frustrated—and remand necessary—only where [the court is] unable to fathom the [ALJ's] rationale in relation to evidence in the record." *Britt*, 860 Fed. Appx. at 262 (internal quotation marks and citation omitted).

**B.    Residual Functional Capacity**

A claimant's residual functional capacity is determined using a two-step process. The ALJ must first "identify the individual's functional limitations . . . and assess [their] work-related abilities on a function-by-function basis." SSR 96-8p, 61 Fed. Reg. at 34,475. "The function-by-function approach asks the ALJ to consider a claimant's specific 'exertional and

nonexertional functions.'"[8]  *Ladda* v. *Berryhill*, 749 Fed. Appx. 166, 173 (4th Cir. 2018)

(quoting SSR 96-8p, 61 Fed. Reg. at 34,476).  The ALJ then expresses a claimant's residual

functional capacity "in terms of the exertional levels of work," such as "sedentary, light,

medium, heavy, and very heavy."  SSR 96-8p, 61 Fed. Reg. at 34,475; *see also* 20 C.F.R.

§ 404.1567 (defining the physical exertion requirements of each exertional level of work).

"When a claimant has several impairments, including non-severe impairments, the administrative

law judge must consider their cumulative effect in making a disability determination."  *Britt*, 860

Fed. Appx. at 261 (citing 20 C.F.R. § 416.945(a)(2)); *accord Brown* v. *Commissioner, Soc. Sec.

Admin.*, 873 F.3d 251, 255 (4th Cir. 2017); *Mascio*, 780 F.3d at 635.

     When formulating a residual functional capacity assessment, an ALJ "must consider all

the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a

function-by-function basis, how they affect [the claimant's] ability to work.'"  *Thomas* v.

*Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe*, 826 F.3d at 188) (alteration in

original); *see also* SSR 96-8p, 61 Fed. Reg. at 34,477 (directing that an ALJ must consider the

"limitations and restrictions imposed by *all* of an individual's impairments, even those that are

not severe," when assessing a claimant's residual functional capacity) (emphasis in original).

While the SSA guidelines require a "function-by-function" analysis to determine a claimant's

residual functional capacity, the United States Court of Appeals for the Fourth Circuit has held

that this analysis does not need to be explicit.  *Mascio*, 780 F.3d at 636 (rejecting "a per se rule

requiring remand when the ALJ does not perform an explicit function-by-function analysis").

---

[8]  "Exertional capacity . . . defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 61 Fed. Reg. 34,474-01, 34,477 (July 2, 1996).  "Nonexertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength," such as stooping, climbing, reaching, seeing, hearing, speaking, understanding and remembering instructions, and tolerance of temperature extremes.  *Id.*

Instead, the key consideration is whether the ALJ identified the evidence relied upon in determining the claimant's residual functional capacity and built "an accurate and logical bridge from the evidence to that conclusion." *Monroe*, 826 F.3d at 189 (internal quotation marks and citation omitted). A proper residual functional capacity analysis "has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas*, 916 F.3d at 311. The second component of this analysis, "the ALJ's logical explanation, is just as important as the other two." *Id.*; *see also* SSR 96-8p, 61 Fed. Reg. at 34,478 ("The [residual functional capacity] assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence.").

When evaluating a claimant's subjective statements regarding his symptoms, an ALJ is required to use the two-step framework set forth in 20 C.F.R. § 404.1529 and Social Security Ruling 16-3p, Titles II And XVI: Evaluation Of Symptoms In Disability Claims (SSR 16-3p), 82 Fed. Reg. 49,462-03. *Arakas* v. *Commissioner, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020). Under this framework, the ALJ must first "determine whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms." *Id.* (quoting 20 C.F.R. § 404.1529(b); SSR 16-3p, 82 Fed. Reg. at 49,463). Second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p, 82 Fed. Reg. at 49,464; *see also Arakas*, 983 F.3d at 95; 20 C.F.R. § 404.1529(c). Importantly, "[a]t this step, objective evidence is *not* required to find the claimant disabled." *Arakas*, 983 F.3d at 95 (emphasis in original). A claimant is "entitled to rely exclusively on subjective evidence" to prove the severity and extent of their symptoms. *Hines* v. *Barnhart*, 453 F.3d 559, 563, 565 (4th Cir. 2006). Thus, an ALJ commits "reversible error by improperly increasing Plaintiff's burden of proof by 'effectively requiring' [their] subjective

symptoms to be 'supported by objective evidence.'" *Christina W.* v. *O'Malley*, Civil Action No. CDA-23-1325, 2024 WL 3819343, at *4 (D. Md. Aug. 14, 2024) (quoting *Arakas*, 983 F.3d at 96); *see also Stoker* v. *Saul*, 833 Fed. Appx. 383, 386 (4th Cir. 2020) (per curiam) (finding that "the ALJ's determination that [the claimant's] assertions about the severity and limiting effects of his pain were less credible merely because no objective medical evidence supported them, was improper").

As noted, *see* I.C.*, supra*, at step two of the sequential evaluation process, the ALJ found that Plaintiff has Complex Regional Pain Syndrome, among other severe impairments.  This syndrome is a condition that "typically follows an injury," and is "characterized by various degrees of burning pain, excessive sweating, swelling, and sensitivity to touch."  *Tiffany M.* v. *Kijakazi*, Civil Action No. AAQ-21-2284, 2022 WL 4131195, at *2 (D. Md. Sept. 12, 2022). The SSA has issued guidance that specifically addresses Complex Regional Pain Syndrome. Social Security Ruling 03-2p, Titles II and XVI: Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome (SSR 03-2p), 68 Fed. Reg. 59,971-01 (Oct. 20, 2003).[9]  Of relevance here, SSR 03-2p notes that "conflicting evidence in the medical record is not unusual in cases of [Complex Regional Pain Syndrome] due to the transitory nature of its objective findings and the complicated diagnostic process involved."  *Id.* at 59,974.  Once Complex Regional Pain Syndrome "has been established as a medically determinable impairment, the adjudicator must evaluate the intensity, persistence, and limiting effects of the

---

[9]  Social Security Rulings, upon publication, "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the Social Security Administration.  20 C.F.R. § 402.160(b)(1).  An ALJ is not required to cite to specific Social Security Rulings in their decision, but they must apply the correct legal standard supported by substantial evidence in the record.  *Tiffany M.* v. *Kijakazi*, Civil Action No. AAQ-21-2284, 2022 WL 4131195, at *2 (D. Md. Sept. 12, 2022) (citing *Arakas* v. *Commissioner, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020)).

individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.* "For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id.*; *see also Jermain G.* v. *Kijakazi*, Civil Action No. GLS-21-2445, 2023 WL 196050, at *4 (D. Md. Jan. 17, 2023) (providing an extensive discussion of SSR 03-2p and the required components of an ALJ's assessment of Complex Regional Pain Syndrome).

Before engaging in step four of sequential evaluation process, the ALJ determined Plaintiff's residual functional capacity. In this section of her analysis, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." ECF No. 8-3 at 24. The ALJ noted that Plaintiff testified at the hearing that he experienced "daily pain in his left ankle, plus swelling after standing for short periods of time." *Id*. The ALJ reviewed portions of Plaintiff's medical history, including an emergency room visit in January 2016 after Plaintiff twisted his ankle while working. *Id.* at 25. The ALJ also reviewed the results of an MRI from April 2016 and summarized medical evidence relating to other concerns, including pain in Plaintiff's low back, left chest, arm, and neck (*id.*), as well as "chronic back pain," which Plaintiff reported to his primary care doctor in 2021 (*id.* at 26). The ALJ also reviewed mental health records, including a September 2020 psychological assessment that concluded that Plaintiff had a "depressed mood and anxiety/anger secondary to an ankle injury several years ago," (*id*. at 25), as well as therapy notes which documented that Plaintiff "was frustrated with his physical limitations" and had "a hard time completing household

11

projects, such as painting," and he "felt 'out of commission for [three] days' after attempting a task he thought would be simple and easy" (*id*. at 26).  The only citation to the record that the ALJ noted in which Plaintiff's Complex Regional Pain Syndrome diagnosis appears is a November 2020 psychiatric evaluation that diagnosed Plaintiff as having an "anxiety disorder due to [a] medical condition and complex regional pain syndrome . . . of the left lower extremity."  *Id*.  The ALJ's discussion of Plaintiff's symptoms related to his Complex Regional Pain Syndrome is minimal.  Ultimately, the ALJ concluded that while Plaintiff's medical records "confirm some treatment for his impairments," they "do not support the severity of symptoms alleged."  *Id*. at 24.

Plaintiff argues that the ALJ's conclusions are not supported by substantial evidence because the ALJ did not analyze Plaintiff's Complex Regional Pain Syndrome under SSR 03-2p. ECF No. 12 at 9–10.  Plaintiff further contends that the ALJ failed to "reconcile[] Plaintiff's consistent reports of disabling pain and functional loss with the cited normal findings, nor did she identify which of Plaintiff's allegations were credited and how they were reflected in the" residual functional capacity determination.  *Id*. at 14.  The undersigned concurs.

When assessing Complex Regional Pain Syndrome, an ALJ must account for its "transitory nature" and "conflicting evidence."  *Jermain G.*, 2023 WL 196050, at *4.  Further, the ALJ must explain "which of the claimant's symptoms the ALJ 'found consistent or inconsistent with the evidence in [the] record and how [the] evaluation of the individual's symptoms led to [the ALJ's] conclusions.'"  *Paul P.* v. *Saul*, Civil Action No. GLS-19-2793, 2021 WL 1134751, at *3 (D. Md. Mar. 24, 2021).  An ALJ's residual functional capacity determination is not supported by substantial evidence where the ALJ did not "provide any discussion explaining how the conflicting evidence discounted Plaintiff's reports of pain."  *Adam H.* v. *Bisignano*, Civil Action No. JMC-25-913, 2026 WL 568774, at *5 (D. Md. Mar. 2, 2026);

12

*see also Tyheim H.* v. *Kijakazi*, Civil Action No. ADC-21-223, 2022 WL 195606, at \*5 (D. Md. Jan. 21, 2022) (finding the ALJ erred when he did not discuss conflicting medical evidence, explain why he found unpersuasive medical opinions regarding Plaintiff's inability to stand or walk at least six hours, or address other reports in the record of Plaintiff's pain, antalgic gait, and unsteady walk).

Here, the ALJ did not engage in the analysis of Plaintiff's Complex Regional Pain Syndrome that SSR 03-2p requires. Importantly, the ALJ's decision does not acknowledge the unique features of this syndrome, including its transitory nature, the fact that "[t]he degree of reported pain is often out of proportion to the severity of the precipitating injury," and that "conflicting evidence in the medical record is not unusual." SSR 03-2p, 68 Fed. Reg. at 59,972, 59,974. As in the cited cases, the ALJ did not engage with the conflicting evidence or provide "any discussion explaining how the conflicting evidence discounted Plaintiff's reports of pain." *Adam H.*, 2026 WL 568774, at \*5 (citing *Paul P. v. Saul*, 2021 WL 1134751, at \*3; *Tyheim H.*, 2022 WL 195606, at \*4). Nor did the ALJ "adequately explain conclusions regarding credibility and how those conclusions factored into [the residual functional capacity] determination." *Jermain G.*, 2023 WL 196050, at \*4.

In response, the Commissioner contends that the ALJ "followed SSR 03-2p's guidance throughout the sequential evaluation process" and "properly contrasted" Plaintiff's allegations of pain with the relevant evidence in the record in finding these allegations inconsistent with Plaintiff's treatment history and activities of daily living.[10] ECF No. 16 at 2, 7. SSR 03-2p and interpretive case law, however, require more than merely listing contrasting medical evidence

---

[10] As this Court has observed previously, "[w]hile the Commissioner theorizes how a proper analysis could certainly be reached under the available evidence, the Commissioner's argument does not properly represent the ALJ's reasoning." *Adam H.* v. *Bisignano*, Civil Action JMC-25-913, 2026 WL 568774, at \*5 (D. Md. Mar. 2, 2026).

13

and allegations of pain.  *E.g.*, *Jermain G.*, 2023 WL 196050, at *5 ("Even assuming, *arguendo*, the ALJ intended to support his credibility determination by presenting the contrast between the Plaintiff's hearing testimony and his various doctor visits, the analysis is deficient.").  "The ALJ bears the responsibility of clearly articulating why [they] find[] Plaintiff's statements to be incredible, citing to specific inconsistencies, and explaining how those inconsistencies support [the] credibility conclusion."  *Id.*  In sum, because the ALJ did not apply the correct legal standard under SSR 03-2p and did not offer adequate explanation, the decision must be reversed.

III.    **CONCLUSION**

For the foregoing reasons, the Commissioner's decision is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion pursuant to sentence four of 42 U.S.C. § 405(g).  In remanding for further explanation and analysis, the Court offers no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct.  A separate Order follows.

Date:  April 10, 2026

_____/s/_____
Erin Aslan
United States Magistrate Judge

14